UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBYN ABRAHAM,

                Plaintiff,

-against-

ABBY LEIGH in her individual capacity and as Executrix of the ESTATE OF MITCH LEIGH, THE VIOLA FUND, ABBY LEIGH LTD, MARTHA WASSERMAN in her individual capacity and as Executrix of the ESTATE OF DALE WASSERMAN, HELLEN DARION, in her individual capacity as Executrix of the ESTATE OF JOSEPH DARION, and ALAN HONIG,

                Defendants.

Case No. 17-cv-5429 (KPF)

**DECLARATION OF IRA S. SACKS IN SUPPORT OF WASSERMAN'S AND HONIG'S MOTION FOR SANCTIONS**

I, Ira S. Sacks, hereby declare under penalty of perjury as follows:

1. I am a partner of Akerman LLP, counsel to defendants Martha Wasserman, as Executrix of the Estate of Dale Wasserman ("Wasserman") and Alan Honig ("Honig", and with Wasserman, collectively, the "Defendants"). I respectfully submit this declaration in support of Wasserman's and Honig's Motion for sanctions against Plaintiff Robyn Abraham ("Abraham" or "Plaintiff") pursuant to the Court's inherent power to impose sanctions on a party for perpetrating a fraud on the Court or, alternatively, pursuant to Rule 37 of the Federal Rules of Civil Procedure (the "Motion"). Other than as expressly set forth herein, this declaration is on personal knowledge and from documents produced during discovery and materials exchanged in connection with pre-motion practice.

2. As explained in greater detail below, numerous documents produced by Abraham

in PDF-format file type ("PDF-format")[1] – documents that look like emails without a corresponding email-format file type ("email-format") – are fake and fraudulent. Those documents are demonstrably fake/fraudulent, as follows:

    a. fake/fraudulent on their face (3 documents);

    b. shown to be fake/fraudulent by comparing them to email-format emails sent on the same date and at the exact same time (2 documents);

    c. shown to be fake/fraudulent by comparing them to email-format emails sent on the same date, but at a different time (5 documents); and

    d. bear indicia of fraud, when such PDF-format emails are viewed in the context of other contemporaneous email-format emails (3 documents).

3. In addition, Abraham's assertions as to why there are no corresponding email-format emails to Abraham's PDF-format emails are without merit and made up out of whole cloth.

4. Finally, Defendants' ability to forensically test Abraham's authenticity assertions have been blocked by Abraham permitting her personal laptop, on which these emails were created, to be destroyed.

5. As a result, and as more fully shown below, and in the accompanying Memorandum of Law and the Declaration of Duc Nguyen, dated May 23, 2019 (the "Nguyen Dec."), Abraham has committed fraud on the Court and the Defendants, submitted evasive discovery responses and document productions, engaged in willful spoliation, committed perjury and should be severely sanctioned.

---

[1] "PDF-format file type" refers to documents produced by a party where the metadata shows PDF for "file type" or where there is no "file type" metadata and the document is produced in PDF format.

A. **Background**

6. Abraham's production of documents during discovery contains documents that look like emails in two different file types: (i) email-format email documents, with associated metadata; and (ii) PDF-format email documents – that is, documents that look like emails, but were produced as PDFs without associated metadata. There are 33 discrete PDF-format documents that appear to be emails contained in Abraham's production, which were produced *solely* in PDF-format, without metadata and without a corresponding email-format document. *See* Exhibit 1, annexed hereto.[2]  Thirteen of those 33 documents are demonstrably fake/fraudulent.

7. Abraham sent and received emails primarily through two email accounts related to her businesses: rabraham@intcapsol.com and robyna@hbglobal.tv.  Both of those email accounts were hosted by GoDaddy.com LLC ("GoDaddy").

8. Documents produced by Abraham bear bates numbers beginning with ABR. Documents with bates prefix "W" are documents produced by Wasserman; and bates prefix "LEIGH" are documents produced by Defendant Abby Leigh, as Executrix of the Estate of Mitch Leigh.

B. **Documents Fraudulent On Their Face**

9. As shown in the Nguyen Dec., filed herewith, there are three documents among the 33 PDF-format email documents that are fraudulent on their face. *See* Exhibit 2 (ABR003111),

---

[2] Exhibit 1 contains a chart identifying the 33 discrete PDF-format documents that appear to be emails contained in Abraham's productions. Also identified in Exhibit 1 are the corresponding duplicate PDF-format documents for each of the 33 discrete PDF-format emails produced in various Abraham productions. To the extent that any or all of the PDF-format documents are excluded from, or limited in, use in this litigation (if the litigation is not dismissed), such sanctions should apply with equal force and effect to the corresponding duplicates.

Exhibit 3 (ABR003112), Exhibit 4 (ABR003113), attached hereto.[3]

10. As Mr. Nguyen concludes, printing an authentic email (or converting an authentic email to PDF) **would not under any circumstances** cause:

   a. the disappearance of the open quotation mark in the "from" field;

   b. the email sender's name to have quotation marks around it when the email is the top email in the chain or the sole email sent;

   c. the email chain to have the earliest-in-time email in the chain first, rather than the latest-in-time email first in the chain;

   d. the lack of the word "Re" to appear at the beginning of the subject line for a reply email;

   e. the lack of print indicators along the page header, such as: page numbering, user name as title/header, printer message, etc.; or

   f. the lack of a previous message entry indicator, such as: "original message" or "On [Date] at [TIME] [EMAIL AUTHOR] wrote." *See* Nguyen Dec., ¶¶ 12-41.

11. For example, when an email is sent from an email account, the account populates the "**from**" field automatically. I have reviewed Abraham's entire production in this case. There are 49 emails in email-format in Plaintiff's production where the top email in the chain or the sole email is **from** Abraham's intcapsol.com email account. In **none** of them is the name R. Abraham in quotation marks. As a result, the email account would not have populated the email name in the "from" field with quotation marks around it.

12. There are 44 emails in email-format in Plaintiff's production where the top email

---

[3] Exhibits 2, 3 and 4 contain green highlights that identify the anomalies – other than omissions – contained in those PDF-format emails that would, under no circumstances, be present in authentic versions of those emails.

4

in the chain or the sole email is **to** Abraham's intcapsol.com account. In **none** of them is the name R. Abraham in quotation marks.

13. The only time quotation marks appear around the name R. Abraham in email-format documents in Plaintiff's production related to the intcapsol.com email account is when there is a reply or a forward. In **none** of them is the name R. Abraham missing the open quotation mark.

14. My observations in ¶¶ 11-13 above, have been confirmed by Duc Nguyen. *See* Nguyen Dec., ¶¶ 13-16, 23-26, 33-36.

15. As Mr. Nguyen concludes, the documents attached as Exhibits 2, 3 and 4 are not authentic – that is, they are fake/fraudulent – for the reasons described above. Exhibits 2, 3, and 4 have the characteristics described above that would, under no circumstances, be present in authentic versions of those emails.

### C. Doctored PDF-Format Emails of the Same Date And Time As Email-Format Emails

16. Abraham produced two PDF-format emails shown to be fake/fraudulent based on a comparison to certain email-format emails produced by Abraham (as well as others) with the ***same addresses, sender and ccs, with the same subject at the same date and time***. *See* Exhibit 5 (ABR0000577) and Exhibit 8 (ABR0000431), annexed hereto.[4]

17. Exhibit 5 is a PDF-format email produced by Abraham that does **not** contain a post-script. However, there **is** a post-script in the email-format email produced by Abraham (*see* Exhibit 6 (ABR001162), annexed hereto) and in the email-format email produced by Wasserman (*see*

---

[4] In sections C and D, yellow highlighting contained in the exhibits is to show additions in the PDF-format documents as compared to the corresponding email-format documents; pink highlighting contained in the exhibits is to show material in the email-format documents that was deleted from the corresponding PDF-format documents in "creating" the fake/fraudulent PDF-format emails documents.

5

Exhibit 7 (W0000431-32, at W0000432), annexed hereto). Exhibits 5, 6 and 7 are each emails dated September 20, 2013 at 6:53 AM (adjusted for time zones) from Wasserman to Abraham with a copy to Nan Bases. The postscript contained in both Exhibit 6 and Exhibit 7 states, ███████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Exhibit 5 is demonstrably fake and was fraudulently created by Abraham.[5]

18.     Similarly, Exhibit 8 is a PDF-format email chain produced by Abraham that contains an email from Beverly Lynn Diamond (a business associate of Abraham) to Tom Bovino (a business associate of Mitch Leigh), copied to Abraham, dated December 16, 2013, at 2:01 PM. In the PDF-format email, the third sentence states, ████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████ Ex. 8 (emphasis added).

19.     Despite that, Abraham also produced an email-format email (*see* Exhibit 9 (ABR001200), annexed hereto) and Leigh produced an email-format email (*see* Exhibit 10 (LEIGH0000249), annexed hereto) with email chains containing an email involving the same parties on the exact same date and time as Exhibit 8. In the authentic email-format emails, the third sentence states, █████████████████████████████████████████████████████████ ████████████████████████████████ Exs. 9-10 (emphasis added). Therefore, Exhibit 8 – the PDF-format email – was clearly doctored and is fake/fraudulent.

---

[5] Abraham speculated that the reason for the missing post script is that "it got cut off somewhere" or that "it may have continued to another page." *See* Exhibit 36, annexed hereto (Abraham Deposition Transcript ("Abraham Tr.")), at 126-29. A review of the produced emails in this case shows that the post script is not near the bottom of the first page of the email.

6

20. Thus, 5 of the 33 PDF-format email documents – Exhibit 2 (ABR003111), Exhibit 3 (ABR003112), Exhibit 4 (ABR003113), Exhibit 5 (ABR0000577) and Exhibit 8 (ABR0000431) – are fake/fraudulent beyond any doubt. That alone requires sanctions, including dismissal of the Amended Complaint or, at the very least, the exclusion of **all** PDF-format email documents produced by Abraham for all purposes in this case.

D. <u>PDF-Format Emails That Are Fraudulent and Were Created Through "Cut and Paste" Or Other Doctoring of Email-Format Emails</u>

21. That is not the end of the fraud, however. Five additional PDF-format emails produced by Abraham were created by cutting and pasting content from email-format emails and then adding additional content.

22. For example, Abraham produced both a PDF-format email (*see* Exhibit 11 (ABR000578), annexed hereto) and an email-format email (*see* Exhibit 12 (ABR0001165), annexed hereto), both of which indicate that they are from Wasserman to Abraham and both of which are dated on September 23, 2013. *See* Exs. 11-12. Both begin as follows: ▮

▮

▮

▮ *See* Exs. 11-12. Thereafter, the two documents have ***some*** additional material that is the same in both emails.

23. However, both emails also contain significantly different content as is highlighted in yellow in the PDF-format email (Exhibit 11) and as is highlighted in pink in the email-format email. (Exhibit 12). Significantly, what was left out of Exhibit 11 – the PDF-format email– but which is contained in Exhibit 12 – the email-format email– is ▮

▮

▮

7

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Compare* Exhibit 11 and Exhibit 12. Exhibit 11 – the PDF-format email, which omits ████████████████ ████████ contained in Exhibit 12 – is fake/fraudulent.

24. A second example of this type of fraud is made clear by comparing the PDF-format email produced by Abraham (*see* Exhibit 13 (ABR000580), annexed hereto) with an email-format email produced by Abraham (*see* Exhibit 14 (ABR001251), annexed hereto), both of which indicate that they are emails from Wasserman to Abraham, dated January 7, 2014, with the subject ████████████████████████████████████████ *See* Exs. 13-14. However, the PDF-format email (Exhibit 13) has additional content as highlighted in yellow, as follows, ████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ It also adds ████████ ████████████████ *See* Ex. 13. On the other hand, the email-format email (Exhibit 14) merely contains a single sentence, stating ████████████████████████████████████ *See* Ex. 14. Exhibit 13 – the PDF-format email– is fake/fraudulent.

25. A third example of this type of fraud is made clear by comparing a PDF-format email produced by Abraham (*see* Exhibit 15 (ABR000576), annexed hereto) with an email-format email produced by Wasserman (*see* Exhibit 16 (W0000428-29, at W0000428), annexed hereto). Exhibit 15 is an email dated September 12, 2013, at 4:58 PM, and purports to be an email from Wasserman to Abraham, with the subject: ████████████████████████████████████ ██████████████████████████████████████████ *See* Ex. 15. Exhibit 16 contains an email chain, which includes an email on the same date, with the exact same subject, two minutes earlier, at 4:56

8

PM. *See* Ex.16.

26. The authentic email-format email has three sentences, the last two sentences of which merely state: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ as is highlighted in pink. *See* Ex. 16.

27. On the other hand, the PDF-format email has the following text after the first sentence, as is highlighted in yellow: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬ *See* Ex. 15. Exhibit 15 – the PDF-format email document –is fake/fraudulent.[6]

28. A fourth example of this type of fraud is made clear by comparing a PDF-format email produced by Abraham (*see* Exhibit 17 (ABR000040), annexed hereto) with an email-format email produced by Wasserman (*see* Exhibit 18 (W0001125), annexed hereto) and an email-format email produced by Abraham (*see* Exhibit 19 (ABR001876), annexed hereto). The bottom email in the authentic email chains is dated July 11, 2014 at 12:52 PM, with the subject: ▬▬▬▬▬▬▬ ▬▬▬▬▬▬, and is from Wasserman to Abraham. *See* Exs. 18-19. The PDF-format email has the same date, from, to and subject, but the time is six minutes later, at 12:58 PM. *See* Ex. 17.

29. The entirety of the authentic email-format emails states: ▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬ *See* Exs. 18-19.

---

[6] Abraham has argued in her deposition that the different text in certain emails can be explained because Nan Bases, Wasserman's attorney, directed Wasserman to send a second, different email. *See* Exhibit 36, Abraham Tr. at 118-21, 160. That cannot explain the difference between the email-format email sent at 4:56 PM (Exhibit 16) and the PDF-format email sent at 4:58 PM (Exhibit 15).

30. The PDF-format email – Exhibit 17 – adds the following, as highlighted in yellow:

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ *See* Ex. 17. Exhibit 17 contains plainly concocted text, not matching even Abraham's own email-format email.

31. A final example of this type of fraud is made clear by comparing a PDF-format email produced by Abraham (*see* Exhibit 20 (ABR000579), annexed hereto) with an email-format email produced by Wasserman (*see* Exhibit 21 (W0001085-88, at W0001086-87), annexed hereto) and an email-format email produced by Abraham (*see* Exhibit 22 (ABR001173-74), annexed hereto). The authentic emails are dated October 17, 2013, at 10:58 AM (adjusted for time zones) with the subject ████████████████████████████████████████████████████████, and is from Wasserman to Abraham, with copies (ccs) to Nan Bases, Maureen Watson (Wasserman's assistant), and Dr. Romeo Garza (Wasserman's brother). *See* Exs. 21-22. The PDF-format email has the same date, from and to lines, but there are no ccs, the time is 10:21 AM, and the subject line is altered to state ████████████ *See* Exs. 20. There are significant discrepancies in the content of the emails. *Compare* Ex. 20 with Exs. 21-22.

32. Again, with respect to all of these exhibits, yellow highlighting in the PDF-format emails show additions not present in the corresponding email-format emails. The pink highlighting in the corresponding email-format emails shows differences from the corresponding PDF-format emails. Thus, an additional 5 of the 33 PDF-format email documents – Exhibit 11 (ABR000578), Exhibit 13 (ABR000580), Exhibit 15 (ABR000576), Exhibit 17 (ABR0000040) and Exhibit 20

(ABR0000579) – are fake/fraudulent.

### E. Additional Documents Exhibiting Indicia of Fraud Because They Make No Sense When Viewed in Context of Other Contemporaneous Emails

33. Three of the 33 PDF-format email documents, when viewed in chronological context of email-format email documents on or around the date of the PDF-format email documents, make no sense and, therefore, exhibit indicia of fraud: Exhibit 23 (ABR000589), Exhibit 24 (ABR003109) and Exhibit 25 (ABR000007), annexed hereto.

34. Exhibit 23 (ABR000589) is a PDF-format email, dated April 30, 2013 at 3:18 PM, that purports to be from Wasserman to Abraham. That alleged email states, among other things, ▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 23.

35. Exhibit 24 (ABR003109) is a PDF-format email, dated September 23, 2013 at 10:38 AM, that purports to be from Abraham to Wasserman, and purports to state, in part, ▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 24.

36. Exhibit 25 (ABR000007) is a PDF-format email, dated September 27, 2013 at 9:51 AM, that purports to be from Wasserman to Abraham. Exhibit 25 was attached to the First Amended Complaint as Exhibit 2 and was relied on by this Court in its decision finding that Abraham stated a claim for promissory estoppel against Wasserman. That email purportedly states, "since I don't think the 50th Anniversary MOLM or any good MOLM production will happen

11

without you, I want you to know that I will give you my 1/3 MOLM vote." *See* Ex. 25.

37. Those three PDF-format email documents (*see* Exhibits 23, 24 and 25) are belied by the context of email-format emails produced in this litigation – many of which were produced by Abraham – that were sent around the same dates. The context drawn from the email-format emails is as follows.

38. On April 29, 2013, Abraham writes to Wasserman (after just having met her for the first time the day before) and states, *inter alia*, ███████████████████ ███████████████████████████████████████ ███████████████████████████████████ *See* Exhibit 26 (ABR001052-53), email-format email, annexed hereto.

39. Wasserman responds to this email later that day stating, among other things, ██ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███ *See* Exhibit 27 (ABR001056-59, at ABR001057), email-format email, annexed hereto.

40. Thereafter, in an email dated May 3, 2013, Wasserman writes to Abraham, with a copy to Nan Bases and others, stating that ████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████ *See* Exhibit 28 (ABR001082), email-format email, annexed hereto.

41. Thus, Exhibit 28 demonstrates that, ████████████████████████████

12

███████████████████████████████████████, contrary to Exhibit 23 (the PDF-format email document discussed above), ███████████████████████████████████████ ███████████████████████████ *Compare* Ex. 28 with Ex. 23.

42.     That fact – that Mitch Leigh and Hellen Darion together, and not Mitch Leigh alone, comprise the majority – is repeated in additional email-format emails produced by Wasserman and Abraham. *See* Exhibit 6 (ABR001162) and Exhibit 29 (W0000431-32, at W0000432), email-format email, annexed hereto. For example, in Exhibit 29, an email, dated September 20, 2013, from Wasserman to Abraham with a copy to Nan Bases, states ████████████████ ████████████████████████████████████████████████████████████████ ████████████████ Exhibit 29 also states, ████████████████████████████ ████████████████████████████████████████████████████ *See* Ex. 29.

43.     Additionally, in an email, dated September 23, 2013 at 4:59 PM (*see* Exhibit 12), Wasserman states again that ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ The email goes on to state, ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ *See* Exhibit 12 (ABR001165) (emphases in

13

original). Notably, Exhibit 24 (which contains Abraham's PDF-format email) was sent the ***same day*** as Exhibit 12 (containing Abraham's email-format email). *Compare* Ex. 12 with Ex. 24.

44.     Moreover, shortly thereafter, on October 3, 2013, Abraham writes to Wasserman, ***without copying Nan Bases***, asserting that ███████████████████████ ███████████████████████, and states, among other things, that ███████████████ ███████████████████████████████████████████████ ███████████████████████████ ███████████████ ███████████████████████████████████ *See* Exhibit 30 (ABR001168-72, at ABR001168), email-format email, annexed hereto.

45.     On October 17, 2013, Wasserman responds to Abraham, copying Nan Bases, stating, among other things, that ███████████████████████████████████, and indicating that ███████████████████████████████████ ███████████████ Wasserman also ███████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████ Wasserman goes on to state that ███████████████ ███████████████████████████████████████████████ ███████████████████████████████ Finally, Wasserman states, ████ ███████████████████████████████████████████████ ███████████████████████ *See* Exhibit 22 (ABR001173-74), email-format email, annexed hereto.

46.     Thus, when viewed in chronological context, the email-format emails (Exhibits 6, 12, 22, and 26-30) sent on or around the dates of the PDF-format emails (Exhibits 23, 24 and 25),

demonstrate that the PDF-format emails make no sense and were merely created by Abraham to suit her needs and defraud this Court, prospective counsel, her prior counsel, and Defendants and their counsel.

**F. Abraham, An Attorney, Improperly Communicates Directly With Wasserman, Despite Knowing That Wasserman Was Represented by Counsel, Nan Bases**

47. As noted above, several emails between Abraham and Wasserman make clear that Abraham, a lawyer, was aware that Wasserman was represented by counsel, Nan Bases. These include an email, dated May 2, 2013 where ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Exhibit 31 (W0001049-50 at W0001050), annexed hereto. On May 3, 2013, Abraham responds, stating that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at W0001049.

48. Similarly, in an email, dated September 20, 2013, Wasserman advised Abraham that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Exhibit 6 (ABR001162).

49. The same point was made in an email, dated September 23, 2013, in which Wasserman advises Abraham that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and advises Abraham that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Exhibit 12 (ABR001165); Exhibit 32 (W0001085-88,

15

at 0001087) ( ███████████████████████████████████████████████████████████████████ ); Exhibit 22 (ABR001173-74, at ABR001174) ( ██████████████████████████████████████████████████████████████████████████████ ).

50. I am not aware of a single document, and Abraham identifies none in her deposition (*see* Exhibit 36, Abraham Tr. at 22-23)), where Nan Bases gives Abraham permission to contact Wasserman directly. Not only that, Abraham realized that, as a lawyer, she could not – or at least should not – contact non-lawyers directly. *See* Exhibit 33 (ABR001163-64, at ABR001163), annexed hereto ( ████████████████████████████████████ ).

51. Notwithstanding these emails and lack of consent from Nan Bases, on September 23, 2013, Abraham purportedly writes to Wasserman (in a PDF-format email), without even copying Nan Bases, stating, among other things, ████████████████████████████████ ████████████████████████████████████████████████ and ████████████████ ████████████████████████████████████████████████████████████████ *See* Exhibit 24 (ABR003109).

52. Thereafter, in response, on September 27, 2013, Wasserman purportedly writes to Abraham (in a PDF-format email document) that, "[i]n follow up to my email last Friday, and while I did tell you that Alan Honig demands $100,000 upfront just to discuss MOLM without any promise of any rights, since I don't think the 50th Anniversary MOLM or any good MOLM production will happen without you, I want you to know that I will give you my 1/3 MOLM vote." *See* Exhibit 25 (ABR000007).

53. Additionally, in PDF-format email documents attached as Exhibits 2 and 3 above, Abraham purports to write to Wasserman ████████████████████████████████████

16

████████████████████████. *See* Exs. 2-3.

54. To the extent PDF-format email documents between Abraham and Wasserman are not otherwise excluded from any use in this litigation (if the litigation is not dismissed), they should be excluded because they violated Abraham's ethical obligations to communicate and/or deal with Wasserman through her counsel.

### G. The GoDaddy Server Crash Excuse

55. The alleged GoDaddy server crash does not explain away the fraudulent nature of the PDF-format email documents discussed above. Even if there was a server crash and that crash resulted in lost emails – of which there is no evidence and as to which GoDaddy indicated it did not occur – that does not explain away the bases for fraud set forth above.

### H. Spoliation: Abraham Permits Her Laptop to Be Destroyed

56. On November 30, 2018, I wrote to the Court regarding our concerns that the PDF-format emails produced by Abraham bore indicia of fraud. In connection with that issue, Defendants prepared a document subpoena to serve on GoDaddy because Plaintiff's then-counsel, Arnold & Porter ("A&P"), had advised Defendants' counsel that Plaintiff had indicated that the corresponding email-format email documents had been lost due to a GoDaddy server crash. In addition, we requested that the Court permit Defendants to "forensically examine Abraham's computer and email accounts." *See* Exhibit 34 (November 30, 2018 letter, without exhibits), annexed hereto.

57. At the conference before the Court on December 18, 2018 concerning these issues, A&P repeated to the Court "that one explanation is that from, what [A&P] understand[s], there was trouble with the servers that Ms. Abraham used, the GoDaddy.com, to explain why some of these [native format emails] do not exist anymore, but they did exist in 2014, when they were preserved and printed." *See* Exhibit 35 (Transcript of 12/18/18 Hearing), at 14), annexed hereto.

17

Thereafter, the Court inquired of Abraham's former counsel, "I just want to make sure I'm hearing this and understanding this correctly. There is no other reason that Ms. Abraham can think of as to why these documents no longer exist in native format other than crashes to the server. Is that correct?" Counsel responded, "Yes, your Honor…." *Id*., at 17.

58. Following additional argument concerning the propriety of subpoenaing GoDaddy and conducting a forensic analysis, this Court permitted Defendants to serve a subpoena on GoDaddy, but denied Defendants' request for a forensic examination, permitting leave to renew, depending on what Ms. Abraham recounted at her deposition. *See* Ex. 35, at 24-26. At no time during that conference was the Court advised that the laptop requested to be forensically examined was no longer in existence.

59. Abraham was deposed on January 17, 2019. *See* Ex. Abraham testified that the laptop she had in 2013 and 2014 was damaged because "somebody slammed it in an overhead bin and that was pretty much the end of it." *Id*., Abraham Tr. at 57-58. Abraham testified that the laptop was in a case and that a passenger was getting on the plane and was "moving things around, and then slammed the top of the overhead bin onto it." *Id.,* at 141. Abraham further testified that her attorneys were aware that her laptop was crushed on an American Airlines flight. *Id.*, at 61.

60. Abraham also testified that this was the laptop that she used when she provided emails concerning this matter to her attorneys in London in 2014. *Id.*, at 109.

61. In addition, Abraham testified that (a) she provided the broken laptop to her alleged "computer expert [Steve Bardfield] who tried to pull data off of it, and he said he was not successful," (b) she no longer has the laptop because after Bardfield took the laptop he said he "used it for parts" and Bardfield said "[did Abraham] have a problem with it", and Abraham said "[n]o" and (c) she contacted Bardfield after the commencement of this litigation to see if he still

maintains the laptop and she was told that it is gone. *Id*., at 109-11.

62. Finally, on February 11, 2019, Plaintiff produced photographs purportedly showing the damage to her laptop and a copy of an invoice from Steve Bardfield dated September 27, 2014. *See* Exhibit 37 (ABR007281-87), annexed hereto. The photos appear to show damage, but not extreme damage, to the cover, side and hinge of her laptop. Moreover, the invoice states, among other things, that (a) the laptop was "dropped", (b) "Case damaged, DVD drive broken, exaust [sic] fan port broken, display broken", (c) Abraham was charged for data recovery and analysis, and received a discount on the invoice due to a credit for "[o]ld computer for parts." *Id*., at ABR007287. Importantly, there is no indication on the invoice that the hard drive, from which ESI could be recovered, was damaged.

63. Abraham's then-counsel, Schillings, sent a demand letter sent to the Estate of Mitch Leigh, dated July 11, 2014. *See* Exhibit 38, annexed hereto. As a result, Abraham was on notice prior to such date to preserve documents and relevant electronic information. Accordingly, Abraham should not have allowed her laptop to have been allegedly salvaged for parts by Mr. Bardfield and lost and/or destroyed, as that laptop would have contained relevant electronic information concerning Abraham's documents in this action.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: June 12, 2019                                    *s/ Ira S Sacks*
      New York, New York                                  Ira S. Sacks