UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBYN ABRAHAM,<br><br>                    Plaintiff,<br><br>       -v.-<br><br>ABBY LEIGH as Executrix of the<br>ESTATE OF MITCH LEIGH, THE<br>VIOLA FUND, ABBY LEIGH LTD.,<br>MARTHA WASSERMAN in her<br>individual capacity and as Executrix<br>of the ESTATE OF DALE<br>WASSERMAN, and ALAN HONIG,<br><br>                  Defendants. | 17 Civ. 5429 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Robyn Abraham claims that Defendants — Abby Leigh (in her individual capacity, as Executrix of the Estate of Mitch Leigh, and as Trustee of the Viola Fund and Abby Leigh Ltd.), Martha Wasserman (in her individual capacity and as Executrix of the Estate of Dale Wasserman), Hellen Darion (in her individual capacity and as Executrix of the Estate of Joseph Darion), and Alan Honig — breached a contract (the "Talent Agreement") that entitled Plaintiff to exclusive production rights to a revival of the musical, *Man of La Mancha*. In response, Defendant Leigh filed counterclaims against Plaintiff, alleging that she breached her fiduciary duties when she drafted and entered into the Talent Agreement. Plaintiff now moves to dismiss these counterclaims for failure to state a claim. For the reasons set forth below, Plaintiff's motion is denied.

# BACKGROUND[1]

## A.    Factual Background

### 1.    The Communications Between January 6 and 20, 2014

Mitch Leigh was a composer of the Tony-award winning musical *Man of La Mancha* ("MOLM").  (Am. Countercl. ¶¶ 3-5).  Plaintiff is an attorney licensed to practice law in, among other places, New York and the United Kingdom.  (*Id.* at ¶ 2).  On January 6, 2014, Plaintiff and Mr. Leigh met in person to discuss a revival of MOLM (the "January 6 Meeting").  (*Id.* at ¶ 12).  Plaintiff claims that she and Mr. Leigh reached an agreement in principle that she would be given exclusive rights to a revival production of MOLM.  (Am. Compl. ¶¶ 1-2).  Defendant Leigh goes further, claiming that during the January 6 Meeting, Mr. Leigh hired Plaintiff as his attorney for the revival.  (Am. Countercl. ¶ 13).

On January 9, 2014, three days after the meeting, Plaintiff sent Mr. Leigh's assistant an email titled "Draft Six Month Agreement — January 6th

---

[1]    This Opinion draws its facts from Defendant Leigh's Answer ("Leigh Answer" (Dkt. #86)), her Amended Counterclaims ("Am. Countercl." (Dkt. #105)), and several exhibits attached to the Amended Counterclaims.

The Court also draws on facts pleaded in the Amended Complaint ("Am. Compl." (Dkt. #41)), and the Talent Agreement attached thereto as Exhibit 1.  The Court may consider the Amended Complaint and the Talent Agreement because the Leigh Answer and the Amended Counterclaims incorporate them by reference.  *See, e.g.*, *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (finding that district courts may consider "documents appended to the complaint or incorporated in the complaint by reference" when assessing the sufficiency of a pleading (quoting *Concord Assocs., L.P.* v. *Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016))); *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (holding that documents that may be considered in determining a motion to dismiss are those that are "integral" to the claims alleged even if not incorporated in the complaint by reference).

For convenience, the Court refers to Plaintiff's Memorandum of Law in Support of the Motion to Dismiss the Amended Counterclaims as "Pl. Br." (Dkt. #103), Defendant Leigh's Memorandum of Law in Opposition to the Motion to Dismiss as "Leigh Opp." (Dkt. #111), and Plaintiff's Reply Memorandum of Law in Support of the Motion to Dismiss as "Pl. Reply" (Dkt. #131).

Follow Up."  (Am. Countercl., Ex. A).  Plaintiff's email stated:  "Since we did not discuss fees or costs during our January 6 meeting, we can address this as a discussion point for final comments in the Agreement."  (*Id.* at ¶ 15).  Plaintiff also included her hourly rate.  (*Id.*).  The email attached "a simple draft one page agreement memorializing that which we discussed with [Mr.] Leigh."  (*Id.*).  The attached document is titled "SIX (6) MONTH EXCLUSIVE CONTRACT RE: LONDON STAGE PRODUCTION OF MAN OF LA MANCHA ('MOLM')" (the "Draft Agreement").  (*Id.* at ¶ 16).  This document appears to be a first draft of the Talent Agreement.  (*Id.*).

The next day, January 10, 2014, Plaintiff sent Mr. Leigh's assistant an email stating that "during our Monday meeting, [Mr. Leigh] specifically did agree to hire me as his lawyer and solicitor for a period of six (6) months[.]" (Am. Countercl. ¶ 17; *id.*, Ex. B).  On the same day, Plaintiff purportedly dictated a letter to her assistant to be sent to Mr. Leigh to "recap [Plaintiff]'s understanding of [the] January 6, 2014 meeting."  (*Id.* at ¶ 18; *id.*, Ex. C).  In that letter, Plaintiff wrote that she was "optimistic that if authorized to proceed as [Mr. Leigh's] London exclusive counsel, she could deliver" the desired results.  Plaintiff went on to claim that "during the meeting ... [Mr. Leigh] advised [Plaintiff that he] would hire [her] on [his] behalf for 6 months as [his] attorney/solicitor."  (*Id.*, Ex. C).

On January 20, 2014, Plaintiff revised the Draft Agreement and sent a new draft to Mr. Leigh via fax.  (Am. Countercl. ¶ 22; *id.*, Ex. D).  In the fax,

Plaintiff stated that she had attached a "revised six month London contract, with references to fees and costs eliminated." (*Id.*).

### 2. The Talent Agreement

Plaintiff alleges that she and Mr. Leigh entered into the Talent Agreement on January 23, 2014. (Am. Compl., Ex. 1). To the extent this is accurate, Defendant Leigh claims that it evidences a breach of Plaintiff's fiduciary duty to Mr. Leigh, insofar as Plaintiff drafted the final Talent Agreement without affording Mr. Leigh "the opportunity[] to seek independent legal advice from other counsel with respect to the Talent Agreement." (Am. Countercl. ¶¶ 31-32).

The Talent Agreement "grants [Plaintiff] the sole and exclusive legal and business rights for six months to represent [MOLM] in England and United Kingdom for the purpose of obtaining initial professional interest[.]" (Am. Compl., Ex. 1). Upon successful performance of the Agreement, Plaintiff would be entitled to receive an exclusive license to stage a MOLM revival, with 1.5% royalties to the owners and no further negotiation. (Am. Countercl. ¶ 30; Am. Compl. ¶¶ 56-60, 76).

### 3. The Attempted Enforcement of the Talent Agreement

Mr. Leigh died on March 16, 2014, during the six-month term of the Talent Agreement. (Am. Countercl. ¶ 8). Defendant Leigh was duly appointed Executrix of his estate (the "Estate"). (*Id.* at ¶¶ 1, 8). After Mr. Leigh's death,

Plaintiff attempted, without success, to enforce the Talent Agreement by sending a demand letter to the Estate. (*Id.* at ¶ 36; Am. Compl., Ex. 14).

**B.      Procedural Background**

Plaintiff filed this action on July 18, 2017. (Dkt. #1). She then filed the Amended Complaint on September 15, 2017, after receiving leave to do so from the Court. (Dkt. #40). In an oral decision issued on June 14, 2018, the Court granted in part and denied in part Defendants' several motions to dismiss the Amended Complaint. (Dkt. #65 (order memorializing decision); Dkt. #78 (transcript of decision)).

On August 3, 2018, Defendant Leigh filed an answer to the Amended Complaint, and asserted counterclaims against Plaintiff. (Dkt. #86). On August 23, 2018, the Court granted Plaintiff leave to file a motion to dismiss Defendant Leigh's counterclaims. (Dkt. #90). On October 11, 2018, Plaintiff moved to dismiss Defendant Leigh's counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. #101). In response, on October 18, 2018, Defendant Leigh amended her counterclaims against Plaintiff. (Dkt. #105). The Amended Counterclaims allege, in relevant part, that: (i) Plaintiff breached a fiduciary duty owed to Mr. Leigh by negotiating and entering into the Talent Agreement; and (ii) in the event Plaintiff receives an award of damages from her suit against Defendants, Defendant Leigh should receive a setoff as a result of Plaintiff's misconduct. (Am. Countercl. ¶¶ 38-53).

On October 25, 2018, the Court granted Plaintiff's request that her motion to dismiss apply to Defendant Leigh's Amended Counterclaims. (Dkt.

#107).  Defendant Leigh filed an opposition to the motion to dismiss on November 9, 2018.  (Dkt. #111).  The motion was fully submitted after Plaintiff filed her reply brief on December 10, 2018.  (Dkt. #131).

On March 11, 2019, Plaintiff's original counsel, who had prepared Plaintiff's motion to dismiss the Amended Counterclaims, withdrew from the case with the permission of the Court.  (Dkt. #213).  After Plaintiff retained new counsel, that counsel adopted the prior motion papers.  (Dkt. #272).

## DISCUSSION

### A.    Motions to Dismiss Under Rule 12(b)(6)

A court evaluates a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) using the same standard as a motion to dismiss a complaint.  *A.V.E.L.A., Inc.* v. *Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015) (internal citations omitted).  When evaluating a motion to dismiss counterclaims for failure to state a claim, a court "must accept the material facts alleged in defendants' answer and counterclaims as true and ... construe all reasonable inferences in favor of the defendants."  *Meridien Int'l Bank Ltd.* v. *Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 445 (S.D.N.Y. 1998); *Gant* v. *Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995).

A counterclaim defendant prevails on a motion to dismiss if the counterclaim "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  And while a court should accept the counterclaim-plaintiff's allegations as true, it

need not follow that course for any of counterclaim-plaintiff's legal conclusions. *See id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Nor must a court "accept as truth conflicting pleadings . . . that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001). In sum, "[a] motion to dismiss should be granted 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Nielsen* v. *AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).

**B.     Defendant Leigh States a Claim for Breach of Fiduciary Duty**

Defendant Leigh counterclaims that Plaintiff breached a fiduciary duty owed to Mr. Leigh when she drafted and entered into the Talent Agreement — an agreement that was equal parts unreasonably disadvantageous to Mr. Leigh and windfall to Plaintiff. (*See* Am. Countercl.). To establish a *prima facie* case of breach of fiduciary duty in New York, a plaintiff must allege "(i) a duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson* v. *Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011); *see also Spinelli* v. *Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018); *Burry* v. *Madison Park Owner LLC*, 924 N.Y.S.2d 77, 78 (1st Dep't 2011).[2]

---

[2]     New York law governs this dispute, per the choice-of-law provision in the Talent Agreement. (*See* Am. Compl., Ex. 1).

Plaintiff does not challenge the sufficiency of the pleadings as to the second and third elements of the claim, and the Court therefore does not address them in this Opinion. Instead, Plaintiff argues that Defendant Leigh does not plausibly allege the first element of the breach claim, i.e., that Plaintiff owed Mr. Leigh a fiduciary duty. As set forth in the remainder of this section, the Court concludes that Defendant Leigh has stated a claim for breach of fiduciary duty.

### 1. Applicable Law

"A fiduciary relationship exists under New York law when one . . . is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation." *Flickinger* v. *Harold C. Brown & Co., Inc.*, 947 F.2d 595, 599 (2d Cir. 1991) (internal quotations omitted); *Eurycleia Partners, LP* v. *Seward & Kissel, LLP*, 12 N.Y.3d 553, 561 (2009). "At the heart of the fiduciary relationship lies reliance, and *de facto* control and dominance." *N. Shipping Funds I, LLC* v. *Icon Capital Corp.*, 921 F. Supp. 2d 94, 101 (S.D.N.Y. 2013) (internal quotation marks omitted) (applying New York law). "[A] court will [also] look to whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge." *Wiener* v. *Lazard Freres & Co.*, 672 N.Y.S.2d 8, 14 (1st Dep't 1998); *see also People ex rel. Cuomo* v. *Coventry First LLC*, 13 N.Y.3d 108, 115 (2009) (noting that a fiduciary relationship "exists only when a person reposes a high level of confidence and reliance in another, who thereby exercises control and dominance over him").

Attorney-client relationships are "sufficiently rooted in trust and confidence to trigger" fiduciary duties. *World Wrestling Entm't, Inc.* v. *Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 503 (S.D.N.Y. 2007) (quoting *Ross* v. *FSG PrivatAir Inc.*, No. 03 Civ. 7292 (NRB), 2004 WL 1837366, at *5 (S.D.N.Y. Aug. 17, 2004)); *accord Greene* v. *Greene*, 56 N.Y.2d 86, 92 (1982). It is well-settled that "a fiduciary duty arises when a lawyer deals with persons who, although not strictly [the lawyer's] clients, [the lawyer] has or should have reason to believe rely on [the lawyer]." *Koppel* v. *4987 Corp.*, No. 96 Civ. 7570 (HB), 2001 WL 47000, at *11 (S.D.N.Y. Jan. 19, 2001) (quoting *Croce* v. *Kurnit*, 565 F. Supp. 884, 890 (S.D.N.Y. 1982), *aff'd*, 737 F.2d 229 (2d Cir. 1984)), *aff'd sub nom. Greenberg* v. *Malkin*, 39 F. App'x 633 (2d Cir. 2002) (summary order). Thus, "a court must look to the words and actions of the parties to ascertain the existence of a [fiduciary] relationship." *Moran* v. *Hurst*, 822 N.Y.S.2d 564, 566 (2d Dep't 2006) (citing *Tropp* v. *Lumer*, 806 N.Y.S.2d 599, 600 (2d Dep't 2005)). "[C]ourts cannot determine the existence of a fiduciary relationship by recourse to rigid formulas." *Kottler* v. *Deutsche Bank AG*, 607 F. Supp. 2d 447, 465 (S.D.N.Y. 2009) (internal quotation marks omitted). For this reason, "[a] claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." *Abercrombie* v. *Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006).

## 2. Analysis

Defendant Leigh alleges that a fiduciary relationship existed between Plaintiff and Mr. Leigh, because Mr. Leigh hired Plaintiff to be his attorney

during the January 6 Meeting. (*See* Am. Countercl. ¶¶ 38-47; Leigh Opp. 7-10). This assertion is bolstered by exhibits to the Amended Counterclaims, representing communications between and among Plaintiff, Mr. Leigh, and Mr. Leigh's staff in the days following the January 6 Meeting (the "2014 Communications"). (*See* Am. Countercl., Ex. A-D). In those communications, Plaintiff claimed to Mr. Leigh that he had hired her as his attorney during the January 6 Meeting. (*See id.*, Ex. B ("[Mr. Leigh] specifically did agree to hire [Plaintiff] as his lawyer and solicitor for a period of six (6) months"); *id.*, Ex. C (Mr. Leigh "advised [he] would hire [Plaintiff] on [his] behalf for 6 months as [his] attorney/solicitor to secure [his] list of initial UK and US talent interest")). Read in the light most favorable to Defendant Leigh, these communications indicate that Plaintiff was Mr. Leigh's counsel, or that she at the very least had given Mr. Leigh reason to believe she was, and that she consequently owed Mr. Leigh a fiduciary duty. *See Koppel*, 2001 WL 47000, at *11 (a lawyer owes a fiduciary duty to a non-client that the lawyer has reason to believe relies on his or her advice); *compare Almazan* v. *Almazan*, No. 14 Civ. 311 (AJN), 2015 WL 500176, at *12 (S.D.N.Y. Feb. 4, 2015) (finding that a lawyer must accept the trust reposed in him or her by another person to create a fiduciary relationship with that person).[3]

Plaintiff is thus left with the unenviable task of arguing that the Amended Counterclaims do not plausibly allege that she acted as Mr. Leigh's

---

[3] For these reasons, the Court disagrees with Plaintiff's repeated claim that the Amended Counterclaims are devoid of any facts to support a conclusion that an attorney-client relationship existed. (*See* Pl. Br. 5-7; Pl. Reply 1-4).

attorney, even though they contain Plaintiff's own contemporaneous declarations that she had been hired to act as Mr. Leigh's attorney. Plaintiff turns a blind eye to those declarations, and instead draws the Court's attention to: (i) a statement in the 2014 Communications that indicates that the attorney-client relationship was not finalized; and (ii) the absence of evidence that a fee arrangement was entered into by the parties. (*See* Pl. Br. 5-7). The Court is unpersuaded by these arguments.

Plaintiff first points the Court to a single sentence in one of the 2014 Communications, in which Plaintiff related that "she was optimistic that if authorized to proceed as [Mr. Leigh's] London exclusive counsel, she could deliver the preliminary interest, subject to your funding, and talent terms and conditions." (Pl. Br. 6 (quoting Am. Countercl., Ex. C)). According to Plaintiff, this statement forecloses an inference that an attorney-client relationship had been finalized. And read in a vacuum, it does suggest that Plaintiff was seeking to be hired as Mr. Leigh's attorney, but had not yet received the job.

But this suggestion is undercut by multiple other assertions contained in the 2014 Communications, in which Plaintiff explicitly states that Mr. Leigh "specifically did agree to hire [her] as his lawyer[.]" (Am. Countercl., Ex., B). And Defendant Leigh need not prove that Plaintiff was in fact Mr. Leigh's attorney to survive the motion to dismiss; she need only plausibly allege that a fiduciary relationship existed. *See Askew* v. *Lindsey*, No. 15 Civ. 7496 (KMK), 2016 WL 4992641, at *3 (S.D.N.Y. Sept. 16, 2016) ("A plaintiff need not prove these elements at the motion-to-dismiss stage, but he must still plead enough

facts to make out a plausible claim for relief."). To the extent that Plaintiff argues that a single sentence, which casts the attorney-client relationship as unfinalized, should be credited over multiple representations that an attorney-client relationship had been formed, she acknowledges that a dispute of fact exists. Such a dispute cannot be resolved at the motion to dismiss stage. *See Abercrombie*, 438 F. Supp. 2d at 274 (noting that claims of breach of fiduciary duty are typically not amenable to resolution on motions to dismiss because they involve fact-specific inquiries).

Nor is the Court persuaded by Plaintiff's argument that any fiduciary relationship that had formed was terminated immediately, due to an unresolved dispute regarding the legal fees Plaintiff would be paid. (*See* Pl. Br. 6-7). The 2014 Communications do suggest that some disagreement occurred after the January 6 Meeting regarding whether and how much Plaintiff would be paid. For example, on January 10, 2014, Plaintiff disagreed with Mr. Leigh's assistant's message that "Mr. Leigh is not willing to pay legal fees." (Am. Countercl., Ex. B). But the limited evidence of a dispute over fees does not automatically defeat Defendant's Leigh's claim. To the contrary, the pleadings support two distinct inferences that the dispute did *not* result in a termination of the attorney-client relationship.

*First*, the 2014 Communications show that Plaintiff disagreed with Mr. Leigh's assistant's representation that Mr. Leigh would not pay legal fees. Plaintiff stated that Mr. Leigh had specifically agreed to pay Plaintiff during the January 6 Meeting, and Plaintiff then manifested an intent to continue

performing the legal work that she had been hired to do. (*See* Am. Countercl., Ex. B). This supports a reasonable inference that Plaintiff and Mr. Leigh had reached an agreement concerning compensation, and that the attorney-client relationship had not terminated.

*Second*, the pleadings support an inference that the disagreement over payment terms led Plaintiff to drop her demand for payment in exchange for her legal work. Though early drafts of the Talent Agreement included language indicating that Plaintiff would receive legal fees in exchange for her work, later drafts removed references to payment. (*See, e.g.*, Am. Countercl. ¶ 22; *id.*, Ex. D). This suggests that Plaintiff eventually withdrew her demand for payment of legal fees, instead contenting herself with payment for her legal work in the form of the benefits she would receive under the Talent Agreement.[4] And even if Plaintiff and Mr. Leigh never finalized an agreement concerning payment of legal fees, it would not necessarily mean that no attorney-client relationship existed. "[A]n attorney-client relationship does not depend on the existence of a formal retainer agreement or upon payment of a fee." *Moran*, 822 N.Y.S.2d at 566 (citing *Hansen* v. *Caffry*, 720 N.Y.S.2d 258, 259 (3d Dep't 2001); *Jane St. Co.* v. *Rosenberg & Estis*, 597 N.Y.S.2d 17, 18 (1st Dep't 1993)).

---

[4] Plaintiff argues that this and other edits made to later drafts of the Talent Agreement indicate that Plaintiff and Mr. Leigh had determined not to enter into an attorney-client relationship. (*See* Pl. Reply 6-7). While this may be one permissible interpretation of the edits to the Talent Agreement, the Court must make all reasonable inferences in favor of the non-movant at this stage in the proceedings. *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).

At a minimum, Defendant Leigh has plausibly alleged that: (i) Mr. Leigh hired Plaintiff as his attorney during the January 6 Meeting; (ii) Plaintiff understood that she was acting as Mr. Leigh's attorney following that meeting; and (iii) Plaintiff gave Mr. Leigh reason to believe that she was acting as his attorney in drafting the Talent Agreement, such that he could rely upon her advice. If Defendant Leigh's allegations are accepted as true, a factfinder could plausibly infer that Plaintiff owed Mr. Leigh a fiduciary duty when she drafted and entered into the Talent Agreement. Accordingly, Defendant Leigh has plausibly alleged that Plaintiff owed Mr. Leigh a fiduciary duty. As Plaintiff has elected not to challenge the sufficiency of the pleadings as to the other two elements of a breach of fiduciary duty claim, i.e., knowing breach and damages, the Court concludes that Defendant Leigh has stated a claim for breach of fiduciary duty.

## C. Defendant Leigh's Counterclaim for Breach of Fiduciary Duty Is Not Barred by the Statute of Limitations

In the alternative, Plaintiff argues that even if a fiduciary duty existed between Plaintiff and Mr. Leigh, Defendant Leigh's breach of fiduciary duty counterclaim is barred by a statute of limitations. According to Plaintiff, a three-year statute of limitations governs Defendant Leigh's counterclaim, which began to accrue on January 23, 2014, when Plaintiff entered into the Talent Agreement, and expired before the counterclaims were filed on August 3, 2018. (*See* Pl. Br. 2, 7; Pl. Reply 7 (rejecting as well arguments that would tie the accrual date of the claim to Mr. Leigh's death in March 2014, or Plaintiff's demand letter in July 2014)). Defendant Leigh argues that Plaintiff has

invoked the incorrect statute of limitations, and that a six-year limitations period should apply to its counterclaim. (*See* Leigh Opp. 12-16). The Court concludes that a six-year statute of limitations governs Defendant Leigh's counterclaim, and that the claim was filed well within that time period.

### 1.    Applicable Law

Under New York law, "the applicable statute of limitations for breach of fiduciary duty claims depends on the substantive remedy sought. Where the relief sought is equitable in nature, the six-year limitations period of CPLR 213(1) applies." *Kaufman* v. *Cohen*, 760 N.Y.S.2d 157, 164 (1st Dep't 2003) (internal citations omitted). However, if a plaintiff seeks money damages, "courts have viewed such actions as alleging 'injury to property,' to which a three-year statute of limitations applies." *Id.*; *see also Carlingford Ctr. Point Assocs.* v. *MR Realty Assocs., L.P.*, 772 N.Y.S.2d 273, 274 (1st Dep't 2004) ("A breach of fiduciary duty claim is governed by either a three-year or six-year limitation period, depending on the nature of the relief sought. The shorter time period applies where monetary relief is sought, the longer where the relief sought is equitable in nature." (internal citations omitted)).

If a plaintiff seeks both equitable and monetary relief, the Court should "look[] to the reality, rather than the form, of [the] action." *IDT Corp.* v. *Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139-40 (2009). If the plaintiff seeks primarily equitable relief, the six-year statute of limitations applies, even if damages are also sought. *See, e.g., Omni Food Sales* v. *Boan*, No. 06 Civ. 119 (PAC), 2007 WL 2435163, at *5-6 (S.D.N.Y. Aug. 24, 2007). In contrast, if the

equitable relief the plaintiff seeks is incidental to the monetary damages sought, the three-year statute of limitations applies to plaintiff's breach of fiduciary duty claims. *See IDT Corp.*, 12 N.Y.3d at 139-40.

## 2. Analysis

The Court finds that the six-year statute of limitations applies to Defendant Leigh's counterclaim. Defendant Leigh seeks four types of relief in connection with her breach of fiduciary duty counterclaim:

(i)     A declaratory order stating that the six-month exclusive contract (the "Contract") is unenforceable;

(ii)    An injunction prohibiting Plaintiff from further efforts to enforce the Contract;

(iii)   An injunction directing Plaintiff to withdraw or otherwise terminate any filings with the Copyright Office, or with any other federal, state, or foreign court or agency; and

(iv)    Other such relief as this Court may order and deem just and equitable, including the award of attorneys' fees and costs incurred by Defendant Leigh in defending this action.

(Am. Countercl. ¶ 47). The first three requests seek equitable relief, while the fourth seeks attorneys' fees.

Defendant Leigh argues that the relief she seeks sounds primarily in equity, to which money damages are merely incidental. (*See* Leigh Opp. 13-16). Plaintiff does not appear to contest that point; instead, Plaintiff argues that Defendant Leigh is not entitled to the equitable relief requested. (*See* Pl. Reply 13-15). Because Defendant Leigh will not receive any equitable relief, Plaintiff reasons, the breach of fiduciary duty claim should be subject to the

three-year statute of limitation applied to breach of fiduciary duty claims that seek money damages. (*Id.*).

Of course, the Court is required to examine the types of relief *sought*, not the types of relief that a claimant is likely to receive. *See, e.g.*, *IDT Corp.*, 879 N.Y.3d at 139-40. Defendant Leigh plainly seeks declaratory and injunctive relief. This equitable relief is designed to redress the purported wrong identified by the Amended Counterclaims — Plaintiff's breach of fiduciary duty in drafting and entering into the Talent Agreement — by invalidating the Talent Agreement. The monetary damages demanded are purely incidental, and would only allow Defendant Leigh to recoup the funds expended litigating this suit, which she asserts is premised on a breach of fiduciary duty. *See Loengard* v. *Santa Fe Indus., Inc.*, 70 N.Y.2d 262, 266-67 (1987) (applying a six-year statute of limitations where a complaint was "equitable in nature and . . . a legal remedy would not be adequate"). Thus, equitable relief dominates the Amended Counterclaims, and would invalidate the contract that is at the core of the parties' dispute.[5]

Furthermore, even if the Court (i) were to discount the importance of equitable remedies it believed were unlikely to be granted, and (ii) felt

---

[5] In an effort to persuade the Court to conclude otherwise, Plaintiff conflates the counterclaims for breach of fiduciary duty and for setoff. (*See* Pl. Reply 13-14). While the former seeks equitable relief, the latter requests that, in the event Plaintiff receives an award of damages through her Amended Complaint, Defendant Leigh receive a setoff against any damages in excess of $75,000. (*See* Am. Countercl. ¶ 53). Even if the Court were to consider the relief sought by the two counterclaims together, it would conclude that requests for equitable relief predominate. The damages sought in the setoff claim are hypothetical and would only diminish the amount of money Defendant Leigh owes Plaintiff over $75,000, if Plaintiff were to succeed in her breach of contract claims.

competent at this early stage in the proceedings to determine what relief was likely to be granted, the three-year statute of limitations would not be applicable. Plaintiff failed to advance any argument as to why Defendant Leigh will not receive the declaratory relief requested in the Amended Counterclaims. (*See* Pl. Reply 13-14). Thus, the Court has not been given any reason to believe that Defendant Leigh's only genuine claim for relief is for monetary relief.

Because Defendant Leigh seeks both equitable and monetary relief, with equitable relief predominating, the claim is subject to a six-year statute of limitations. *See Omni Food Sales*, 2007 WL 2435163, at *6 ("Here, Omni seeks both equitable (injunctive) and legal (monetary) relief, therefore the claim is subject to the six-year period."). Because the breach of fiduciary duty cause of action accrued, at the earliest, in January 2014, the counterclaims filed in 2018 are timely.

## CONCLUSION

Given the foregoing reasons, Plaintiff's motion to dismiss Defendant Leigh's Amended Counterclaims is DENIED.[6] The Clerk of Court is directed to terminate the motion at docket entry 101.

The parties are hereby ORDERED to provide a joint letter regarding the status of outstanding discovery concerning the counterclaims on or before **September 26, 2019**.

---

[6] In her reply brief, Plaintiff presents a cursory argument that the second claim in the Amended Counterclaims, the setoff claim, is dependent upon the breach of fiduciary duty claim, and should be dismissed for the same reasons. (*See* Pl. Reply 15). Because the Court denies Plaintiff's motion with respect to the breach of fiduciary duty counterclaim, it also denies any request to dismiss the setoff counterclaim.

SO ORDERED.

Dated:      September 9, 2019
              New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge