UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBYN ABRAHAM,

                Plaintiff,

         -v.-                          17 Civ. 5429 (KPF)

ABBY LEIGH, *in her Individual Capacity*         **ORDER**
*and as Executrix of the Estate of Mitch*
*Leigh, the Viola fund, Abby Leigh Ltd*,

                Defendant.

KATHERINE POLK FAILLA, District Judge:

      On May 29, 2022, Ms. Abraham filed a motion to disqualify Nicole Hyland, the expert proffered by Defendant to replace Mr. Lawrence Fox, who is medically unable to participate at trial. (Dkt. #701). In the main, Ms. Abraham alleges that at an earlier stage of this litigation she consulted with and provided confidential information concerning this case to two attorneys at Ms. Hyland's firm, Frankfurt Kurnit Klein & Selz PC.

      Three days after Ms. Abraham filed her disqualification motion, Defendant filed an opposition. (Dkt. #703-704). In connection with this submission, Defendant submitted the declaration of Ronald Minkoff, a partner at Frankfurt Kurnit Klein & Selz PC, who confirmed that he spoke with Ms. Abraham about this case approximately a year and a half ago. For the reasons outlined below, Ms. Abraham's disqualification motion is granted, without prejudice to Defendant's ability to renew its opposition.

## LEGAL STANDARD

"The Court has the inherent power to disqualify an expert witness when such relief is warranted." *Capitol Recs., Inc.* v. *MP3tunes, LLC*, No. 07 Civ. 9931 (WHP), 2010 WL 11590131, at *1 (S.D.N.Y. Apr. 15, 2010) (quoting *Rodriguez* v. *Pataki*, 293 F. Supp. 2d 305, 311 (S.D.N.Y. 2003)); see also *Junger* v. *Singh*, 514 F. Supp. 3d 579, 598 (W.D.N.Y. 2021) ("The court's authority to disqualify a party's expert or consultant is based on its inherent power to preserve the integrity of the adversary process."). "While the reasons behind disqualifying an expert witness are similar to those behind disqualifying an attorney that has a conflict of interest, the two scenarios are distinguishable and subject to different standards." *Grioli* v. *Delta Int'l Mach. Corp.*, 395 F. Supp. 2d 11, 14 (E.D.N.Y. 2005) (citations omitted). In particular, because "[u]nlike attorneys, expert witnesses serve generally as sources of information and not necessarily as recipients of confidences," courts do "not apply the stringent attorney-client conflict standards" in determining whether an expert should be disqualified. *Id.* at 13 (citation omitted). "Disqualification of an expert or consultant generally requires that the party seeking disqualification show that (i) [the moving party] held an objectively reasonable belief in the existence of a confidential relationship with the challenged expert; and (ii) during the relationship there was a disclosure of confidential or privileged information to the expert that is relevant to the current litigation." *Breitkopf* v. *Gentile*, No. 12 Civ. 1084 (JFB) (AKT), 2014 WL 12843765, at *3 (E.D.N.Y. Mar. 24, 2014); see also *Gordon* v. *Kaleida Health*, No. 08 Civ. 378 (LGF), 2013 WL 2250506, at *5

(W.D.N.Y. May 21, 2013) ("The burden is on the party seeking disqualification to show ... [an] 'objectively reasonable' belief that a confidential relationship existed with the expert or consultant and that a party's confidential information was 'actually disclosed' to the expert or consultant.").

Federal courts often look to state disciplinary rules when considering motions for disqualification, although "such rules need not be rigidly applied as they merely provide general guidance." *John Wiley & Sons, Inc.* v. *Book Dog Books, LLC*, 126 F. Supp. 3d 413, 419 (S.D.N.Y. Sept. 4, 2015) (citation omitted); *see also Benevida Foods, LLC* v. *Advance Mag. Publishers Inc.*, No. 15 Civ. 2729 (LTS) (DF), 2016 WL 3453342, at *11 (S.D.N.Y. June 15, 2016) ("Although 'not every violation of a disciplinary rule will necessarily lead to disqualification and thus violations of state or American Bar Association disciplinary rules should not be considered conclusive, such rules often guide judicial decisions on disqualification motions" (internal citations and quotation marks omitted)). The Court thus turns to Rule 1.18 of the New York Rules of Professional Conduct, which governs relationships, such as that at issue here, between an attorney and a prospective client. Under Rule 1.18(a), "a person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client." N.Y. R. Prof'l Conduct 1.18(a). Subsections (b) and (c) of Rule 1.18 further provide:

> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.

> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

*Id.*, 1.18(b)-(c).

Subsection (d) of Rule 1.18, in turn, specifies steps a law firm may take to avoid disqualification by imputation. As relevant here, in order to avoid disqualification, the attorney who communicated with the prospective client must have taken "reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client." N.Y. R. Prof'l Conduct 1.18(d)(2). The Rule also requires the law firm to: (i) promptly and reasonably notify others in the firm that the disqualified attorney may not participate in the representation; (ii) implement "effective screening procedures to prevent the flow of information about the matter between the disqualified lawyer and the others in the firm"; (iii) disallow the apportioning of any part of the fee from the representation to the disqualified attorney; and (iv) provide prompt, written notice to the prospective client. *Id.* 1.18(d)(2)(i)-(iv); *see also Benevida Foods*, 2016 WL 3453342, at *12. Moreover, Rule 1.18 requires that a "reasonable lawyer would conclude that the law firm will be able to provide competent and diligent representation in the matter." N.Y. R. Prof'l Conduct 1.18(d)(3).

4

The comments to Rule 1.18 expand upon the requirements outlined in paragraph (d)(2), noting that large firms, such as those with separate departments or offices in multiple locations, are more likely to be able to meet the requirements and avoid imputed disqualification. *Id.* 1.18, cmt. 7B. The comments add that, while it is not impossible for a small firm to meet the requirements of Rule 1.18(d)(2), "[a] small firm may need to exercise special care and vigilance to maintain effective screening." *Id.* Moreover, the comments provide that, if a disqualified lawyer is working on other matters with the lawyers participating in the matter requiring screening, "it may be impossible to maintain effective screening procedures." *Id.*

## DISCUSSION

On the record presently before it, the Court concludes that Ms. Abraham has satisfied her burden to disqualify Defendant's proposed expert, and that Defendant has not alleged any of the circumstances outlined in Rule 1.18(d) that would assuage the Court that Ms. Hyland was walled off from any confidential information gleaned by her firm. *First*, Ms. Abraham represents that in October 2020, she "extensively discussed" this case with Mr. Minkoff, who is a partner Ms. Hyland's law firm. (Dkt. #701 at ¶ 12). Mr. Minkoff confirms that such a conversation took place on October 15, 2020, which conversation lasted for approximately half an hour. (Dkt. #704 at ¶¶ 2-3). Based on this consultation, Ms. Abraham qualifies as a "prospective client" under Rule 1.18(a), and accordingly has an objectively reasonable belief that she had established some sort of confidential relationship with Mr. Minkoff.

5

*Second*, Ms. Abraham contends that she disclosed confidential information during this conversation, and the Court is inclined to agree. (Dkt. #701 at ¶ 12). Mr. Minkoff proffers that he does not have an independent recollection of the contents of his conversation with Ms. Abraham, but his surrounding emails indicate that the conversation centered on a contempt motion relating to Ms. Abraham's conduct during discovery and a fee dispute with her prior counsel. (Dkt. # 704 at ¶¶ 3, 7). Although Mr. Minkoff does not recall receiving any nonpublic or confidential information about the merits of the underlying dispute (*id.* at ¶ 7), the Court's history with this litigation prevents it from wholly disaggregating the contempt motion from the merits of the dispute. As such, the Court believes it likely that in the course of Ms. Abraham's conversation with Mr. Minkoff, she disclosed confidential or privileged information that is relevant to the current litigation.

Although Rule 1.18 does not bind the Court, this Court refers to it for "general guidance" in resolving Ms. Abraham's motion. *See Hempstead Video, Inc.* v. *Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). Here, Defendant has provided the Court with no assurance that any information gleaned by Mr. Minkoff about this case has not been shared with Ms. Hyland. Indeed, in a letter dated May 19, 2022, Defendant presented Mr. Minkoff and Ms. Hyland together as substitute expert witnesses (Dkt. #688), which suggests a degree of collaboration between these two attorneys on this very matter that would seem to obviate any screening measures that could be implemented. Even so, Defendant has not provided any indication, whatsoever, that the law

firm has implemented measures designed to prevent the flow of confidential information concerning the instant matter between Mr. Minkoff and Ms. Abraham, or that Mr. Minkoff will not share in any payment that is directed to the firm in connection with this case. In the absence of any representation that Frankfurt Kurnit Klein & Selz PC has attempted to meet the requirements of Rule 1.18(d)(2), or that Ms. Hyland has, in fact, been screened from any confidential information the firm obtained in connection with this matter, the Court finds it appropriate to disqualify Ms. Hyland as Defendant's substitute expert witness.

Accordingly, Ms. Abraham's motion to disqualify is GRANTED. This ruling is without prejudice to a further response from Defendant as to any efforts that Frankfurt Kurnit Klein & Selz PC has put in place to screen Ms. Hyland from any confidential information that was obtained as a result of Ms. Abraham's legal consultation with Mr. Minkoff. If Defendant wishes to make a supplemental filing, he shall do so on or before June 3, 2022, at 12:00 p.m. eastern time.

The Clerk of Court is directed to terminate the pending motion at docket entry 701.

SO ORDERED.

Dated:   June 1, 2022
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge